**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **EILEK MÁS RIVERA,**<br><br>Plaintiff,<br><br>v.<br><br>**JULIO ROLDÁN-CONCEPCIÓN** in his personal and official capacity as Mayor of the City of Aguadilla, **MELBA G. RIVERA**, as Director of the Head Start Program of the Municipality of Aguadilla, **GRISELL LAUSELL**, Human Resources director of the Municipality of Aguadilla, **THE MUNICIPAL GOVERMENT OF AGUADILLA.**<br><br>Defendants. | Civil No. 24-1216 (MBA) |

## OPINION AND ORDER

Eilek Más-Rivera ("Más") brought this civil action against Julio Roldán-Concepción, in his personal and official capacity as Mayor of the City of Aguadilla ("Roldán"); Melba G. Rivera-Delgado, Director of the Head Start Program of the Municipality of Aguadilla ("Rivera"); Grisell Lausell, Human Resources Director of the Municipality of Aguadilla ("Lausell") (collectively "Defendants"); and the Municipal Government of Aguadilla ("Aguadilla"), under 42 U.S.C. § 1983 for violating her First Amendment rights. (ECF No. 1). Más also alleged violations of Act 90-2020, P.R. LAWS ANN. tit. 29, §§ 3111, et seq.; Article 1536 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 10801; and Sections 1, 4, 6, and 7 of Article II of the Constitution of the Commonwealth of Puerto Rico, P.R. CONST. art. II, §§ 1, 4, 6, 7. (*Id.* ¶ 1). Más sought injunctive relief in the form of enjoinment of political discrimination and reinstatement to her position as well as monetary damages. (*Id.* ¶¶ 2-3). The Defendants, in their personal capacities, moved to dismiss the action for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6) as to Rivera and Lausell, and argued that the claims against Roldán must be dismissed because he is entitled to qualified

immunity. (ECF No. 16). Más opposed. (ECF No. 26).

For the reasons set forth below, the Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

## BACKGROUND[1]

On April 17, 2007, Más began working for Aguadilla as a Human Resources Official for the Head Start Program and Early Head Start Program. (ECF No. 1 ¶¶ 11, 27). At that time, the mayor of Aguadilla was Carlos Méndez-Martínez ("Méndez-Martínez"), a member of the New Progressive Party ("NPP"). (*Id.* ¶ 27). Más herself is an active member of the NPP. (*Id.* ¶ 20). While working in Aguadilla prior to the 2020 mayoral election, Más never received complaints on her performance and was consistently "praised for her good work." (*Id.* ¶ 28). In the 2020 election, Más actively supported the re-election of then Mayor Yanitsia Irizarry-Méndez ("Irizarry"), also member of the NPP. (*Id.* ¶ 30). However, Roldán, a member of the Popular Democratic Party ("PDP"), won the election. (*Id.* ¶ 31). Less than a year later, in or around August 2021, Más was called by Roldán to a meeting at City Hall, at which Mr. Maviael Morales, vice mayor of Aguadilla, was also present. (*Id.* ¶ 32). In the meeting, Roldán informed Más that she now had to report to Lausell, the recently appointed Director of Human Resources, instead of Mrs. Teresa Soto ("Soto"), then Program Director of the Aguadilla Head Start. (*Id.*). In or around February 2022, Soto was dismissed from her position. (*Id.* ¶ 33).

In early February 2022, Lausell ordered Más to "open a call for the position of the Director of the Head Start program." (ECF No. 1 ¶ 34). Más did not do so. (*Id.*). Más believed she could not open the call because Soto's contract had not yet ended, and she did not know Soto had been or was going to be dismissed. (*Id.*). On March 1, 2022, Lausell called Más to her office to inquire why she had not opened a call for Soto's position. (*Id.* ¶ 35). Más explained why she had not done so, to which

---

[1] For purposes of the Defendant's Motion to Dismiss, the facts are taken from Más's Complaint, ECF No. 1, and are presumed to be true.

Lausell responded in a "loud and threatening voice" that "[Más] had to follow [Lausell's] instructions because her instructions were also the instructions of mayor Roldán-Concepción and that under no circumstance the contract[s] of [NPP] members were going to be renewed and that all the vacancies were for the [PDP] members." (*Id.* ¶¶ 35-36). Más then did as she was told and opened a call for Soto's position. (*Id.* ¶ 37). Afterward, Rivera, who had been the PDP candidate running for mayor of the City of Cataño, was appointed as the Head Start Program Director of Aguadilla. (*Id.* ¶ 38).

In or around the last week of June 2022, Rivera called Más to her office and told her in a "rude and sarcastic way" that Más had to follow her instructions even if they were different from past instructions and that "for now the only valid instructions were the ones of the [PDP]." (ECF No. 1 ¶ 39). At times, Lausell and Rivera gave Más contradictory instructions. (*Id.* ¶ 40). On one occasion, Más followed Lausell's instructions relating to the granting of vacations of the Head Start Program employees. (*Id.*). Two or three days later, Rivera told Más that the employees who were granted vacations had to be called back. (*Id.*). When Más explained to Rivera that she was following Lausell's instructions, Rivera responded that "the only instructions that [Más] had to follow were not co-defendant Lausell or even [Rivera's] instructions, that the valid instructions were the ones issued by the [PDP] and that was something that [Más] had to live with." (*Id.*).

On March 1, 2023, Rivera handed Más a "poor and deficient evaluation" and informed her that said evaluation "was the preamble of her dismissal." (ECF No. 1 ¶ 42). Más complained to Roldán about the poor evaluation and the "harassment that [occurred] almost [on] a daily basis" based on her political affiliation. (*Id.* ¶ 43). Roldán stated that Lausell and Rivera were following his instructions and that Más "didn't seem to realize that the employees affiliated to the [NPP] were not welcome in his administration." (*Id.* ¶ 44). On May 8, 2023, Más asked Rivera to reconsider the performance evaluation. (*Id.* ¶ 45). A week later, on May 16, 2023, Más received a letter signed by Roldán indicating that her contract, expiring on May 31, 2023, would not be renewed. (*Id.* ¶ 46).

3

On May 13, 2024, Más Rivera filed a complaint against the Defendants and Aguadilla, alleging constitutional injury and damages. (ECF No. 1). In response, the Defendants, in their individual capacities, filed a motion to dismiss, asserting that Más failed to state a claim upon which relief may be granted as to defendants Lausell and Rivera, and that Roldán is entitled to qualified immunity. (ECF No. 16).[2] Más opposed. (ECF No. 26). For the reasons stated below, the Court agrees in part.

## STANDARD OF REVIEW

To survive a motion to dismiss at the pleading stage, "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). In evaluating a motion to dismiss, the court first sorts out and discards any "'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alteration marks omitted). The remaining "[n]on-conclusory factual allegations" are fully credited, "even if seemingly incredible." *Id.* (citing *Iqbal*, 556 U.S. at 681). A court must not "forecast a plaintiff's likelihood of success on the merits." *Id.* at 13. Taken together, the allegations must "state a plausible, not a merely conceivable, case for relief." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010). Achieving this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Essentially, "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation modified).

---

[2] Defendants also moved to dismiss Más's claim under the Fourteenth Amendment. (ECF No. 16 at 6-8). However, in her opposition, Más indicated she had no Fourteenth Amendment claim; therefore, there is no such claim to dismiss. (ECF No. 26 at 5 ("Más Rivera has not filed any substantive or procedural due process claims under the Fourteenth Amendment in this case.")). Therefore, the Court reviews the stated claims under the First Amendment, Act 90-2020, and Puerto Rico's general tort statute.

Moreover, in prima facie cases such as this one, "[i]t is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage." *Rodríguez-Reyes v. Moline-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013) ("Although a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial–in a discrimination case, the prima facie standard–she need not plead facts sufficient to establish a prima facie case."). That is because the prima facie case model is an evidentiary standard and not a pleading standard. *Id.* Instead, the requirements of the prima facie case "shed light upon the plausibility of the claim." *Id.* In all, the allegations provided regarding each defendant must be sufficient as to make them a plausible defendant. *Ocasio-Herandez*, 640 F.3d at 16.

## ANALYSIS

### A. First Amendment

Section 1983 in itself does not confer substantive rights, but rather provides a venue for vindicating federal rights elsewhere conferred such that no person acting under the color of state law can deprive others of their rights, privileges, or immunities under the Constitution. *See Graham v. M.S. Connor*, 490 U.S. 386, 393-94 (1989); 42 U.S.C. § 1983. Here, Más presumably invokes Section 1983 to claim that her First Amendment rights were violated by Lausell and Rivera's adverse employment actions. (ECF No. 1 ¶¶ 4, 47).

Under the First Amendment, government officials are prohibited "from taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." *Ocasio-Hermandez*, 640 F.3d at 13 (citations omitted). Hence, the First Amendment "embodies the right to be free from political discrimination." *Irizarry-Robles v. Rodriguez*, 233 F. Supp. 3d 296, 300 (D.P.R. 2017). To establish a prima facie case of political discrimination, the plaintiff must prove four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an

5

adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 239 (1st Cir. 2010) (citation omitted).

Lausell and Rivera dispute the viability of a political discrimination claim against them, arguing Más has failed to "plausibly plead" they were aware of her political affiliation and that the decision not to renew Más's contract was made by Roldán. (ECF No. 16 at 9-11). To this they add: "The decision not to renew Plaintiff's transitory appointment was made on legitimate factors, including performance issues and failure to follow directives." (*Id.* at 11). In her opposition, Más in sum relies on the pleading standards she must meet and references her factual allegations and supporting caselaw. (ECF No. 26 at 6-10).

Here, Más provided sufficient allegations to establish that there are opposing political affiliations between the parties, none of which have been contested. For starters, Más alleged she is an active member of the NPP, was originally appointed in 2007 by an NPP-affiliated mayor, Méndez-Martínez, and actively supported the re-election of Irizarry, the NPP's mayoral candidate for Aguadilla in 2020. (ECF No. 1 ¶¶ 20, 27, 30). Más also alleged that Rivera and Lausell are members of the PDP. (*Id.* ¶¶ 22, 38) (indicating Rivera is a member of the PDP and was "the candidate for mayor of the City of Cataño for the Popular Democratic Party"); (*Id.* ¶¶ 21, 23, 32) (stating Lausell is a member of the PDP and was appointed as the Director of Human Resources by Roldán, mayor of Aguadilla and president of the PDP in Aguadilla). Thus, taking these allegations as true, Más alleged sufficient facts to establish that there are opposing political affiliations between the parties. There ends the parties' apparent consensus. Thus, the Court turns to Más's allegations against each defendant individually. *See Ocasio-Hernandez*, 640 F.3d at 16 ("[W]e must determine whether, as to each defendant, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted.") (quoting *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009)); *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 594 (1st Cir.

2011) ("[A]n adequate complaint must include not only a plausible claim but also a plausible defendant").

### a. Lausell

Más fails to present a plausible claim against Lausell. To conclude that Lausell was aware of Más's political affiliation requires a stacking of inferences. An even clearer hurdle is the absence of an employment decision by Lausell.

To begin with, to prove awareness of her political affiliation, Más need only have "pleaded adequate factual material to support a reasonable inference that the . . . defendants had knowledge of [her] political beliefs." *Ocasio-Hernández*, 640 F.3d at 15. This knowledge, in turn, "may be inferable from other allegations in the complaint." *Rodríguez-Reyes*, 711 F.3d at 55. Más points to statements made by Lausell that "under no circumstance the contract of [NPP] members were going to be renewed and that all the vacancies were for the [PDP] members." (*Id.* ¶ 36). But those statements were made in relation to Soto's contract not being renewed. Más points to no comment made by Lausell suggesting she was aware of Más's political affiliation. Más's closest allegation is that when she complained to Roldán about being harassed by both Rivera and Lausell "for the sole reason of being affiliated with the New Progressive Party," Roldán responded that Rivera and Lausell "were acting under [his] instructions and that [Más] didn't seem to realize that the employees affiliated to the [NPP] were not welcome in his administration." (*Id.* ¶ 44). Thus, the Court would have to adopt Más's rationale for unspecified behavior she categorizes as harassment (which are conclusory allegations) and combine it with Roldán's response to then infer that Lausell had the requisite knowledge. Be that as it may, Más does not allege Lausell made any adverse employment action, a gap fatal to her claim. *See Rodríguez-Cirilo v. García*, 115 F.3d 50, 52 (1st Cir. 1997) (requiring plaintiff prove "the defendants' conduct was the cause in fact of the alleged deprivation").

The occurrence of an adverse employment action is the third element needed to establish a

prima facie case of political discrimination. *Lamboy-Ortiz*, 630 F.3d at 239. Here, Más is unequivocal that it was Roldán that made the decision to not renew her contract. (ECF No. 1 ¶ 46). She makes no allegation that Lausell took part in that decision. *See Ocasio-Hernández*, 640 F.3d at 16 ("[E]ach defendant's role in the termination decision must be sufficiently alleged to make him or her a plausible defendant."). Instead, her allegations as to Lausell focus exclusively on her allegedly harassing treatment of Más. In this case, those allegations are insufficient to establish a prima facie case of political discrimination.

"Actions short of dismissal or demotion, including denials of promotions, transfers, and failures to recall a public employee after layoffs can constitute adverse employment actions." *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 766 (1st Cir. 2010). However, to qualify, those actions must objectively "make an employee's work situation unreasonably inferior to the norm for his or her position, placing substantial pressure on even one of thick skin to conform to the prevailing political view." *Reyes-Orta v. P.R. Highway & Transp. Auth.*, 811 F.3d 67, 75 (1st Cir. 2016) (cleaned up). Hence, while "informal harassment, as opposed to formal employment actions like transfers or demotions, can be the basis for first amendment claims if the motive was political discrimination," these actions must be "'sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party.'" *Martínez-Vélez v. Rey-Hernández*, 506 F.3d 32, 42 (1st Cir. 2007) (quoting *Agosto-de-Feliciano v. Aponte–Roque*, 889 F.2d 1209, 1217 (1st Cir. 1989) (en banc)). To determine whether the actions are sufficiently severe, the court must evaluate the ways in which the plaintiff's job changed. *Reyes-Orta*, 811 F.3d at 76 (quoting *Agosto-de-Feliciano*, 889 F.2d at 1218).

The actions alleged to be taken by Lausell do not meet the standard for "short of dismissal" adverse employment actions. Más alleged that the adverse employment action taken by Lausell was harassment in the form of remarks and contradictory instructions. (ECF No. 1 ¶¶ 36, 40, 41). Más again relies on the Soto call incident. (ECF No. 26 at 8-10). But Más's own political affiliation was not

8

alleged to be part of what caused the reprimand for not opening the call as instructed. And, as Más recognizes, the decision to not renew Soto's contract was made around that same time (ECF No. 1 ¶¶ 34-35), dissipating the alleged illegitimacy or contrarian nature of Lausell's instruction. Más's only other factual allegation is that Lausell gave her one set of instructions, which were later contradicted by Rivera. (*Id.* ¶ 40). But that sheds no light on how Lausell harassed Más based on her political affiliation. After all, Lausell gave the original instructions, and it was Rivera who later contradicted them. (*Id.* ¶ 40). Más's only remaining allegations regarding "daily harassment" are devoid of facts, conclusory in nature, and rest on "the legal conclusion that the plaintiffs sought to infer from the other conduct alleged in the complaint," *Ocasio-Hernández*, 640 F.3d at 10. That does not suffice. *See Agosto-de-Feliciano*, 889 F.2d at 1218 ("To determine whether such a reduction has occurred – in other words, to evaluate whether the changes were sufficiently severe to warrant the 'unreasonably inferior' description – the factfinder should canvass the specific ways in which the plaintiff's job has changed.").

Lastly, Lausell's isolated comment that no NPP members would have their contracts renewed (ECF No. 1 ¶ 36), does not move the needle. First, there is no allegation that this was in fact the case. Second, there is no allegation that Lausell had the authority to make that decision. In fact, the decision here not to renew Más's contract was made by Roldán. Third, the single politically charged isolated remark alone directed at Soto's position cannot be read to place a "substantial pressure on even one of thick skin to conform to the prevailing political view." *Rodríguez-García*, 610 F.3d at 766 (cleaned up). In *Cordero-Suárez v. Rodríguez*, 689 F.3d 77, 83 (1st Cir. 2012), the First Circuit held that that the plaintiff's allegations that the defendant, a former supervisor, "'came near [her] in an intimidating manner and stared at her fixedly' and his comment that he 'would not rest' until [she] lost her job . . . fall well short of the conduct we have found severe and pervasive in the past" to constitute an actionable hostile work environment. That reasoning controls the outcome here.

Therefore, Lausell's motion to dismiss Más's First Amendment claim against her in her

9

individual capacity is **GRANTED**.

### b. Rivera

Rivera stands apart from Lausell. For starters, Rivera authored the "poor and deficient evaluation" and informed Más that "this evaluation was the preamble of her dismissal." (ECF No. 1 ¶ 42). When Más went to Roldán to complain, because of the evaluation she believed was unwarranted and because of the treatment she received, Roldán responded that Rivera and Lausell "were acting under [his] instructions and that [Más] didn't seem to realize that the employees affiliated to the [NPP] were not welcome in his administration." (*Id.* ¶ 44). At this procedural posture, the Court can reasonably infer that Rivera received an instruction from Roldán that resulted in concrete actions by her to end Más's employment—a bad evaluation as a harbinger of a future dismissal. And because NPP employees would not be renewed, Rivera would need to know Más's political affiliation to issue the negative evaluation that would justify the non-renewal of her contract.

The actions taken by Rivera in issuing a poor evaluation that would result in nonrenewal of Más's employment contract based solely on her political affiliation are the type of actions that would place substantial pressure on a person to conform to the prevailing political view. While ultimately the decision to not renew Más's contract was made by Roldán, this does not relieve Rivera of liability. Crediting Más's allegations as true, these allegations meet the standard for the "short of dismissal" adverse employment actions. *See Rodriguez-Garcia*, 610 F.3d at 766. That is, Rivera's conduct went beyond the conclusory allegations directed at Lausell. In addition to incidents with alleged politically charged "rude" and "sarcastic" comments, Rivera issued the poor evaluation notwithstanding Más's years of positive feedback. (*Id.* ¶¶ 28, 39-40). And Rivera admitted that it was the prelude to her dismissal. (*Id.* ¶ 42). Rivera also made clear that the motivations were rooted in political affiliation, telling Más not just that she had to follow instructions, but that she had to follow PDP instructions "even if they were contrary to the rules and regulations of the Head Start Program," at which Más

worked. (*Id.* ¶ 39). That is, Rivera's actions left no doubt that Más's performance was not linked to following the program's rules, but purely party politics. The fact that Más's contract was, in fact, not renewed as foretold by Rivera only confirms the plausibility of Más's allegations. Rivera's request for dismissal is therefore **DENIED**.

### B. Qualified Immunity

For his part, Roldán argues he is entitled to qualified immunity. (ECF No. 16 at 11-13). The Court disagrees. The "[q]ualified immunity doctrine protects government officers and employees from suit on federal claims for damages where, in the circumstances, a reasonable official could have believed his conduct was lawful." *Olmeda v. Ortiz-Quiñonez*, 434 F.3d 62, 65 (1st Cir. 2006) (citing *Rodríguez-Rodríguez v. Ortiz-Vélez*, 391 F.3d 36, 41 (1st Cir. 2004)). Qualified immunity is an affirmative defense and, therefore, Roldán, as the defendant, bears the burden of proof. *DiMarco-Zappa v. Cabanillas*, 238 F.3d 25, 35 (1st Cir. 2001) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 818 (1982); *Gómez v. Toledo*, 446 U.S. 635, 639 (1980)). In determining whether a defendant is entitled to qualified immunity, a court must follow the two-part test reiterated in *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (citing *Pearson*, 555 U.S. at 232).

The second step or "clearly established right" test begets its own two-step analysis. *Maldonado*, 568 F.3d at 269. First, the Court must determine whether the "contours" of the constitutional right were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Then, "focusing concretely on the facts of the particular case, courts examine 'whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights.'" *Díaz v. Concepción*, No. 22-1319 (BJM), 2023 U.S.

11

Dist. LEXIS 36164, *19, 2023 WL 2351732, *7 (D.P.R. March 3, 2023) (quoting *Maldonado*, 568 F.3d at 269). "That is, the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Maldonado*, 568 F.3d at 269.

Here, Roldán does not appear to dispute that Más has alleged a violation of her constitutional rights. (ECF No. 16 at 12). Nor could he. As discussed above, Más has alleged a violation to her First Amendment rights. It is by now beyond dispute that "non-policymaking public employees are protected from adverse employment decisions based on their political affiliation." *Padilla-Garcia v. Guillermo Rodriguez*, 212 F.3d 69, 74 (1st Cir. 2000) (relying on *Elrod v. Burns*, 427 U.S. 347, 354 (1976); *Branti v. Finkel*, 445 U.S. 507, 516 (1980); *Rutan v. Republican Party*, 497 U.S. 62, 75 (1990)). In turn, "transitory employees are protected from politically motivated non-renewals regardless of the number of years they have served." *Figueroa v. Aponte-Roque*, 864 F.2d 947, 951 (1st Cir. 1989); *see also Padilla-Garcia*, 212 F.3d at 75 n.3 ("It is settled law that the *Elrod-Branti* doctrine extends to a politically motivated non-renewal of a term of employment, regardless of the transitory nature of the position.");*Remus-Milan v. Irizarry-Pagan*, 81 F. Supp. 3d 174, 182 (D.P.R. 2015) (same). Moreover, "[t]he nonrenewal of a transitory employment contract constitutes an adverse employment action." *Velásquez-Vélez v. Molina-Rodríguez*, 327 F. Supp. 3d 373, 379 n.6 (D.P.R. 2018).

Roldán does perplexingly argue that on the facts of the case, "[a] reasonable official, such as [himself], would not have understood that not renewing [Más's] transitory appointment . . . constituted a violation of her First Amendment rights." (ECF No. 16 at 13). In making these assertions, Roldán relies on Más's "documented" poor performance review and failure to follow instructions. (*Id.*). But, assuming Más's allegations to be true, as we must at this stage, Más only received a bad evaluation and was accused of not following instructions for purely political reasons. (ECF No. 1 ¶¶ 36, 40, 44, 46). The allegations in the complaint pull the rug right out from under Roldán's feet. What is more, Roldán

attempts to disprove any political animus stating that Más's contract was renewed under his administration. But the only cite he provides sheds no light as to how this is a fact for the Court to consider.[3] In the end, Roldán's efforts are defeated by his own words as alleged in the complaint. According to Más, Roldán told her that she "didn't seem to realize that the employees affiliated to the New Progressive Party were not welcome in his administration." (*Id.* ¶ 44). And he made this statement in response to Más's complaint that she was being subjected to daily harassment and a bad evaluation for the sole reason of her affiliation to the NPP party. (*Id.* ¶ 43). He then followed up with a letter informing Más that her contract would not be renewed. (*Id.* ¶ 46). Nothing in the record supports his argument that the decision was based on a legitimate nondiscriminatory reason. On the contrary, on this record, a reasonable official would have understood that not renewing Más's contract for political reasons would violate her First Amendment rights. Accordingly, Roldán has failed to show he is entitled to qualified immunity and his request for dismissal is **DENIED.**

### C. Puerto Rico Law Claims[4]

#### a. Act 90-2020

Defendants argue that Más's claims under Act 90-2020, known as the "Act to Prohibit and Prevent Workplace Bullying in Puerto Rico," must be dismissed because, they are not "employers" under the Act, they did not engage in "workplace harassment," and Más failed to exhaust

---

[3] Roldán cites Más's complaint, "Docket No. 1, ¶ 33," to support this claim. However, what was cited by Roldán simply states that Soto had been appointed by the previous administration and that she had been dismissed in or around February 2022. (ECF No. 1 ¶ 33). In fact, the complaint makes no mention of Más's contract getting renewed once Roldán was elected as mayor.

[4] Más also brings claims under Sections 1, 4, 6, and 7 of Article II of the Constitution of the Commonwealth of Puerto Rico. (ECF No. 1 ¶¶ 5, 54, 56). Defendants do not move to dismiss these claims. As a result, the Court is in no position to dismiss said claims, however skeletally alleged, against Defendants.

administrative remedies and alternate resolution methods.[5]  (ECF No. 16 at 13-14). For her part, Más does not dispute that she did not exhaust her remedies and argues instead that this is because Defendants did not inform her of such procedures. (ECF No. 26 at 16-17).

First, with regards to bullying, Act 90-2020 "sets forth a strong public policy against any type of workplace bullying that hinders the performance of an employee, alters the peace therein, and undermines the dignity of the workers, regardless of their job category or class." P.R. LAWS ANN. tit. 29, § 3112. The Act prohibits "workplace bullying" inflected by "an employer, its agents, supervisors, or employees." P.R. LAWS ANN. tit. 29, § 3114 (3). It then defines "workplace bullying" as the

> malicious, unwanted, repetitive, abusive, biased, unreasonable, and/or willful conduct; repeated infliction of verbal, written, and/or physical abuse by an employer, its agents, supervisors, or employees unrelated to the legitimate interests of the employer's business unwelcomed to the targeted employee, and which infringes upon the employee's constitutionally protected rights: the dignity of human beings is inviolable; the protection of law against abusive attacks on his honor, reputation, and private or family life; the protection against risks to his health or person in his work or employment. This workplace bullying conduct creates a threatening, intimidating, humiliating, hostile, and offensive environment that a reasonable person would find unsuitable to perform his regular duties and tasks.

P.R. LAWS ANN. tit. 29, § 3114 (3). Más's allegations, however unspecific, fall within this wide berth.

Second, while the Act defines "employer" broadly, it is not as broad as Más suggests:

> **(2) Employer.—** Means any natural or juridical person, the Government of Puerto Rico, including the Executive, Legislative, and Judicial Branches as well as the instrumentalities or public corporations thereof, municipal governments and any of the instrumentalities or municipal corporations thereof that, whether for profit or not, hires personnel for any type of compensation. Moreover, it includes organizations or businesses of the private sector, whether for profit or not, labor organizations, groups, or associations, wherein the employees participate, as well as employment agencies.

---

[5] Act 90-2020, establishes that, before filing a civil action, the aggrieved person must follow "the procedure and protocol established by his employer" and if said action is unsuccessful, they shall "resort to the Alternative Dispute Resolution Bureau of the Judicial Branch" and provide "evidence showing that the alternative method has been exhausted." P.R. LAWS ANN. tit. 29, § 3120.

P.R. LAWS ANN. tit. 29, § 3114 (2). Here, per the complaint, Más was an employee of the Municipality of Aguadilla. (ECF No. 1 ¶¶ 2, 11, 58, 65). The decision to not renew her contract was made by Roldán. (*Id.* ¶ 53). The decision to not renew exists in tandem with the power to renew a contract. Thus, Roldán is the only "natural person" that could be liable as Más's employer. The Act further makes clear that that an employer "who engaged in workplace bullying" shall not be entitled to immunity "in his personal capacity." P.R. LAWS ANN. tit. 29, § 3115. Thus, Roldán and the Municipality are liable "for the actions of the supervisory personnel, or other employees thereof, which constitute workplace bullying." P.R. LAWS ANN. tit. 29, § 3115. Rivera and Lausell are not.

Third, the question remains whether Más can proceed without first exhausting her administrative remedies. While the Act does require exhaustion, P.R. LAWS ANN. tit. 29, § 3120, it first requires that employer have established a "procedure and protocol" for the victim of workplace bullying to follow. *Id.* Defendants do not assert that they had established such a procedure for Más to follow. Accordingly, their argument for dismissal on this basis is denied without prejudice. *See Mercado-Vázquez v. Olivera-Olivera*, No. 21-1620 (CVR), 2022 U.S. Dist. LEXIS 191208, *10-11, 2024 WL 1468486, *4 (D.P.R. Oct. 18, 2022) (denying without prejudice request for dismissal of Act 90-2020 where plaintiff alleged the Municipality "did not have an alternative dispute program in place").

Therefore, Lausell's and Rivera's motion to dismiss this claim is **GRANTED, and Roldán's is DENIED WITHOUT PREJUDICE**.

### b. Article 1536 of the Puerto Rico Civil Code

Más's claim under Puerto Rico's general tort statute is also subject to dismissal. Article 1536 of the Puerto Rico Civil Code imposes liability upon "any person who, through fault or negligence, causes damage to another." P.R. LAWS ANN. tit. 31, § 10801.[6]  However, "to the extent that a specific

---

[6] Here, although the relevant article of the Puerto Rico Civil Code of 2020 is Article 1536, P.R. LAWS ANN. tit. 31, § 10801, some of the applicable case law references Puerto Rico's previous tort statute,

labor law covers the conduct for which a plaintiff seeks damages, he is barred from using the same conduct to also bring a claim under Article 1802." *Rosario v. Valdés*, No. 07-1508 (CCC), 2008 U.S. Dist. LEXIS 13113, at *5, 2008 WL 509204, at *2 (D.P.R. Feb. 21, 2008) (relying on *Santini Rivera v. Serv. Air, Inc.*, 137 P.R. Dec. 1, 5, n.3, 16 (1994)); *see Morales-Díaz v. Roldán-Concepción*, No. 22-1319 (BJM), 2023 U.S. Dist. LEXIS 36164, at *26, 2023 WL 2351732, at *9 (D.P.R. Mar. 3, 2023) (dismissing plaintiff's claims under Article 1536 because the plaintiff based "his Article 1536 claim and his Law 90-2020 claims on the same factual allegations"); *Medina v. Adecco*, 561 F. Supp. 2d 162, 176 (D.P.R. 2008) (dismissing plaintiff's claims under Article 1802 because she based "her Article 1802 claim on the same conduct that supports her employment law claims; she allege[d] no independently tortious conduct"). Here, Más bases her Article 1536 and Act 90-2020 claims on the same factual allegations. As such, Más is precluded from bringing suit under Article 1536.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss be **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico this March 27, 2026.

*s/ Mariana E. Bauzá-Almonte*
MARIANA E. BAUZÁ-ALMONTE
United States Magistrate Judge

---

Article 1802 of the Puerto Rico Civil Code of 1930. Nonetheless, this District has stated that "Articles 1802 and 1536 have provisions that 'are extremely similar and thus can be used interchangeably.'" *Cabrera v. Romano's Macaroni Grill P.R., Inc.*, No. 22-1449 (MEL), 2024 U.S. Dist. LEXIS 216816, at *10 n.4, 2024 WL 4905665, at *4 n.4, (D.P.R. Nov. 27, 2024) (quoting *Orellano-Laureno v. Instituto Médico del Norte, Inc.*, No. 22-01322 (MAJ), 2023 U.S. Dist. LEXIS 121650 at *14 n.4, 2023 WL 4532418, at *6 n.4 (D.P.R. July 13, 2023)). *See also Dumanian v. FirstBank P.R.*, No. 22-1543 (CVR), 2024 U.S. Dist. LEXIS 12122, at *7 n.4, 2024 WL 197429, at *3 n.4 (D.P.R. Jan. 17, 2024) (noting that Article 1536 "contains the same elements as its predecessor, thereby leaving the tort statute practically unchanged. Therefore, all caselaw referencing or analyzed under the now defunct Article 1802 remains in effect and will be applied to any actions brought pursuant to Article 1536 of the Puerto Rico Civil Code of 2020.").